674 F.2d 1023
 Parviz MODABER, M.D., Appellant,
v.
CULPEPER MEMORIAL HOSPITAL, INC.; Thomas A. Flaherty, M.D.,
Giles H. Miller, Jr., George E. Broman, M.D., P. Declan
Burke, M.D., Alfred B. Cramer, III, M.D., W. A. Gravely,
Jr., John J. Payette, M.D., Appellees.
 No. 81-1550.
 United States Court of Appeals,
Fourth Circuit.
 Argued Jan. 4, 1982.
Decided March 24, 1982.
 
 Larry H. Martin, Washington, D. C. (Leitner, Palan, Martin & Bernstein, Mitchell B. Gerson, Washington, D. C., on brief), for appellant.
 Thomas J. Cawley, Fairfax, Va. (Grady K. Carlson, McCandlish, Lillard, Church & Best, Fairfax, Va., on brief), for appellees Miller and Gravely.
 John J. Brandt, Arlington, Va., for appellees Burke, Broman & Cramer.
 Gerald R. Walsh, Fairfax, Va., McCandlish, Lillard, Church & Best, Fairfax, Va., on brief, for appellees Culpeper Memorial Hospital, Inc. and Flaherty.
 Brian C. Shevlin, Fairfax, Va., on brief, for appellee Payette.
 Before RUSSELL, WIDENER and SPROUSE, Circuit Judges.
 DONALD RUSSELL, Circuit Judge:
 
 
 1
 Plaintiff, a physician specializing in obstetrics and gynecology, brought this § 1983 action[1] against a private nonprofit hospital, charging that its revocation of his clinical staff privileges deprived him of a valuable property right without affording him procedural due process under the Fourteenth Amendment.[2] The district court dismissed the complaint for failure to state a claim, finding that the revocation was not "state action" and thus not subject to the Fourteenth Amendment.[3] We affirm.
 
 
 2
 Defendant, the only hospital within thirty miles of Culpeper, Virginia, was built in 1960 with 55% of the construction funds coming from a grant under the Hill-Burton Act.[4] From 1976 until 1980, plaintiff enjoyed clinical staff privileges there. In November of 1980, the hospital withdrew these privileges based upon the conclusion of its medical staff that he was not professionally competent. Plaintiff has contended on appeal that the withdrawal of his privileges was attributable to the state because defendant received Hill-Burton Act funds, accepted Medicare and Medicaid patients, and was required by Statute to report the withdrawal to state medical licensing authorities.[5] We disagree.
 
 
 3
 To determine whether or not defendant's termination of plaintiff's privileges is "state action", we must inquire "whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity that the action of the latter may fairly be treated as that of the State itself." Jackson v. Metropolitan Edison Co., 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974); accord, Flagg Brothers, Inc. v. Brooks, 436 U.S. 149, 157, 98 S.Ct. 1729, 1733, 56 L.Ed.2d 185 (1978). In holding that a privately-owned utility's termination of service is not "state action", the Court in Jackson makes it clear that state involvement without state responsibility cannot establish this nexus. See 419 U.S. 358, 95 S.Ct. 457. A state becomes responsible for a private party's act if the private party acts (1) in an exclusively state capacity, (2) for the state's direct benefit, or (3) at the state's specific behest. It acts in an exclusively state capacity when it "exercises powers traditionally exclusively reserved to the state(,)" 419 U.S. 352, 95 S.Ct. 454;[6] for the state's direct benefit when it shares the rewards and responsibilities of a private venture with the state, see id., 357-58, 95 S.Ct. 456-57, Burton v. Wilmington Parking Authority, 365 U.S. 715, 723-24, 81 S.Ct. 856, 860-61, 6 L.Ed.2d 45 (1961);[7] and at the state's specific behest when it does a particular act which the state has directed or encouraged. See 419 U.S. 354, 357, 95 S.Ct. 455, 456.[8] We must examine plaintiff's contentions in this context.
 
 
 4
 Turning to his first, the Hill-Burton Act provides funding for the construction of private nonprofit hospitals in areas where there is a need for such facilities, and subjects recipients to considerable state and federal regulation.[9] We have held in decisions prior to Jackson that a recipient hospital's action is state action because the hospital implements the Act's congressional purpose of providing health care. See Simkins v. Moses H. Cone Memorial Hospital, 323 F.2d 959, 967-68 (4th Cir. 1963), cert. denied, 376 U.S. 938, 84 S.Ct. 793, 11 L.Ed.2d 659 (1964); see also, Duffield v. Charleston Area Medical Center, Inc., 503 F.2d 512, 515 (4th Cir. 1974); Christhilf v. Annapolis Emergency Hospital Ass'n., 496 F.2d 174, 178 (4th Cir. 1974); Sams v. Ohio Valley General Hospital Ass'n, 413 F.2d 826, 828-29 (4th Cir. 1969). We implicitly recognized in Doe v. Charleston Area Medical Center, 529 F.2d 638 (4th Cir. 1975), the possible inconsistency of these past decisions with Jackson, see 529 F.2d 642, but did not reach the issue because the state criminal abortion statute involved in that case provided support independent of Hill-Burton for finding the recipient hospital's abortion policy to be state action.
 
 
 5
 The case before us squarely presents the question reserved in Doe. We find that our former position that the mere receipt of Hill-Burton Act funds makes the recipient's every act state action is inconsistent with Jackson, which is controlling on us.[10] Recipient hospitals undoubtedly "operate as integral parts of comprehensive joint or intermeshing state and federal plans or programs designed to effect proper allocation of available medical and hospital services for the best possible promotion and maintenance of public health." 323 F.2d 967 (4th Cir. 1963). But the mere fact that the hospitals implement a governmental program does not establish the nexus which Jackson requires.[11] The recipients do not act in an exclusively state capacity. Although health care is certainly an "essential public service", it does not involve the "exercise by a private entity of powers traditionally exclusively reserved to the State." 419 U.S. 352, 95 S.Ct. 454, see Newsome v. Vanderbilt University, 653 F.2d 1100, 1114-15 (6th Cir. 1981); Simkins v. Moses H. Cone Memorial Hospital, 323 F.2d 973 (Haynsworth, J. dissenting).[12] Although the hospitals are within a legislative design to better public health and are subject to extensive regulation, they remain solely responsible for providing the service and solely entitled to the profits therefrom. See 419 U.S. 358, 95 S.Ct. 457. Finally, the Act does not require states to direct or encourage the procedure for making staff privileges decisions which was employed in this case. Although it prescribes that states compel recipients to make personnel decisions on a merit basis, see 42 U.S.C., § 291d(8), it does not specify the method used here.[13] See 419 U.S. 357, 95 S.Ct. 456. At most, it declares that states must approve the policies which recipient hospitals adopt. Mere state approval is not "state action."[14] See id.
 
 
 6
 As for plaintiff's second contention, we have indicated in previous decisions that acceptance of patients receiving Medicare and Medicaid benefits does not make the accepting hospital's actions attributable to the state. See Trageser v. Libbie Rehabilitation Center, 590 F.2d 87, 90 (4th Cir. 1978) (Medicare; veterans' benefits); Walker v. Pierce, 560 F.2d 609, 613 (4th Cir. 1977) (dicta ; Medicaid). The Supreme Court's decision in Jackson does not affect this position. As these benefits are paid to the patients and not the hospitals, they have even less of a relationship to the challenged action than do Hill-Burton Act funds.
 
 
 7
 Plaintiff's final contention is likewise without merit. The state statutes, Va.Code §§ 54-325.1(a)(3) and 8.01-581.8, do not authorize state officials to make privileges decisions[15], or to set forth directions governing the outcome of such decisions[16], or attach consequences to their results.[17] They simply require that revocations be reported, and confer immunity from civil liability upon the persons making the report. Absent evidence of authority to revoke a license, the mere duty to report the revocation of privileges does not involve the "exercise by a private entity of powers traditionally exclusively reserved to the State." 419 U.S. 352, 355-57, 95 S.Ct. 454, 455-56.
 
 
 8
 Nor do plaintiff's contentions, taken together, form a whole which is greater than the sum of its parts. The staff privileges decisions of a hospital which receives Hill-Burton Act funds, accepts Medicare and Medicaid patients and reports privileges revocations to state medical licensing authorities do not constitute "state action." As state action is an essential prerequisite to obtaining relief under 42 U.S.C. § 1983, the district court's decision dismissing plaintiff's claims should be affirmed. Accordingly, the judgment of the district court is
 
 
 9
 AFFIRMED.
 
 
 
 [1]
 Plaintiff's complaint also raised state and federal anti-trust claims, and state contract breach and tortious interference claims
 
 
 [2]
 See, e.g., Matthews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); see generally, L. H. Tribe, American Constitutional Law, 501-06 (1978)
 
 
 [3]
 Purely private behavior does not violate the Fourteenth Amendment, as the Amendment's language limits its application exclusively to acts attributable to the state. See Flagg Brothers, Inc. v. Brooks, 436 U.S. 149, 157, 98 S.Ct. 1729, 1733, 56 L.Ed.2d 185 (1978); Civil Rights Cases, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835 (1883); see generally, U.S.Const. amend. XIV; cf. Parratt v. Taylor, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981); Adickes v. S. H. Kress & Co., 398 U.S. 144, 148, 161-69, 90 S.Ct. 1598, 1610-14, 26 L.Ed.2d 142 (1970); Trageser v. Libbie Rehabilitation Center, 590 F.2d 87, 90 (4th Cir. 1978) (§ 1983 applies to acts done under color of state law)
 
 
 [4]
 42 U.S.C. §§ 291, 291a et seq. (1974)
 
 
 [5]
 Plaintiff also appeals the dismissal of the tortious interference and contract breach claims. He does not appeal the dismissal of the federal antitrust claim. As we affirm the dismissal of the § 1983 claim, and as it is the only federal claim remaining, we need not consider the merits of the pendant claims
 
 
 [6]
 See, e.g., Terry v. Adams, 345 U.S. 461, 469-70, 73 S.Ct. 809, 813-14, 97 L.Ed. 1152 (1953) (plurality opinion; voting); Marsh v. Alabama, 326 U.S. 501, 507-09, 66 S.Ct. 276, 279-80, 90 L.Ed. 265 (1946) (company town, solicitation); Smith v. Allwright, 321 U.S. 649, 658-66, 64 S.Ct. 757, 762-66, 88 L.Ed. 987 (1944) (voting); Nixon v. Condon, 286 U.S. 73, 52 S.Ct. 484, 76 L.Ed. 984 (1932) (voting); see also, 436 U.S. 158-59, 98 S.Ct. 1734-35 (1978); cf. Hudgins v. NLRB, 424 U.S. 507, 513-21, 96 S.Ct. 1029, 1033-37, 47 L.Ed.2d 196 (1976) (Court refused to find shopping center prohibition of solicitation analogous to "company town" prohibition)
 
 
 [7]
 In Burton, the court found "state action" where a private sandwich shop leasing space in a public parking garage refused to serve black customers. The Court based its decision upon the interdependence of the shop and the state. See 365 U.S. 724-25, 81 S.Ct. 861-62. The Court in Jackson limited Burton to cases involving economic interdependence, finding no state action where a privately-owned utility did not share its profits or its responsibility to provide service. We need not decide whether or not economic interdependence requires that the state and the private entity share both. Compare Greco v. Orange Memorial Hospital Corp., 513 F.2d 873, 881 (5th Cir. 1975) (lease with county did not make hospital policy "state action" where lease was not conditioned upon policy's enactment) with Ludtke v. Kuhn, 461 F.Supp. 86, 93-94 (S.D.N.Y.1978) (policy barring female reporters from Yankee Stadium locker room held state action where stadium was leased from city). It is clear that such a relationship is not present where they share neither. See Musso v. Suriano, 586 F.2d 59, 63 (7th Cir. 1978)
 
 
 [8]
 Compare 513 F.2d, 881 with Fitzgerald v. Mountain Laurel Racing, Inc., 607 F.2d 589, 601 (3d Cir. 1979)
 
 
 [9]
 See 42 U.S.C. §§ 291c (authorizes Surgeon General to enact regulations), 291d (prescribes contents of state plan for regulating recipients) (1974)
 
 
 [10]
 The other circuits are in accord. See Musso v. Suriano, 586 F.2d 59, 62-63 (7th Cir. 1978) cert. denied 440 U.S. 971 (1979); Hodge v. Paoli Memorial Hospital, 576 F.2d 563, 564 (3d Cir. 1978) (per curiam ), Schlien v. Milford Hospital, Inc., 561 F.2d 427, 429 (2d Cir. 1977); Madry v. Sorel, 558 F.2d 303, 305-06 (5th Cir. 1977), cert. denied, 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978); Briscoe v. Bock, 540 F.2d 392, 395 (8th Cir. 1976); Taylor v. St. Vincent's Hospital, 523 F.2d 75, 77 (9th Cir. 1975), cert. denied, 424 U.S. 948, 96 S.Ct. 1420, 47 L.Ed.2d 355 (1976); Watkins v. Mercy Hospital Center, 520 F.2d 894, 896 (9th Cir. 1975), quoting Ascherman v. Presbyterian Hospital, 507 F.2d 1103, 1105 (9th Cir. 1974); Greco v. Orange Memorial Hospital Corp., 513 F.2d 873, 880-81 (5th Cir. 1975); see also, Ward v. St. Anthony's Hospital, 476 F.2d 671, 675 (10th Cir. 1973) (pre-Jackson ). It could be argued that since the Hospital's Hill-Burton financial obligation had been satisfied eight months before the plaintiff's hospital privileges were revoked, any rights of the plaintiff derived from the Hill-Burton involvement of the Hospital had expired; but we see no need to examine this possible defense since, as we view it, Jackson makes it clear that, in any event, the Hospital's personnel decisions are not "state action" simply because of Hill-Burton participation, whether the financial obligation of the recipient hospital under Hill-Burton have been exhausted or not
 
 
 [11]
 Cf. Jensen v. Farrell Lines, Inc., 625 F.2d 379, 385-87 (2d Cir. 1980) (Merchant Marine Act regulatory scheme did not make private shipper's recognition of an organization as exclusive bargaining representative "state action".)
 
 
 [12]
 The hospital's monopoly status does not change the result. See 419 U.S. 352-54, 95 S.Ct. 454-56; 523 F.2d 77
 
 
 [13]
 Indeed, the statute's prohibition of federal interference with hospital administration "except as otherwise specifically provided", see 42 U.S.C. § 291m (1974), indicates that Congress intended to avoid such involvement. See 323 F.2d 972-73 (Haynsworth, J. dissenting)
 
 
 [14]
 Of course, state approval after investigation of the act in question presents a different case. See Public Utilities Commission v. Pollack, 343 U.S. 451, 454-56, 72 S.Ct. 813, 816-17, 96 L.Ed. 1068 (1952)
 
 
 [15]
 See Robinson v. Price, 553 F.2d 918, 920 (5th Cir. 1977); see also, Fitzgerald v. Mountain Laurel Racing, Inc., 607 F.2d 589, 600 (3d Cir. 1979) (participation of state official in decision made decision "state action"); Downs v. Sawtelle, 574 F.2d 1, 7 (1st Cir. 1978)
 
 
 [16]
 See 586 F.2d 63
 
 
 [17]
 The state does not make a hospital's decision to revoke privileges dispositive of license revocation. The hospital makes its own decision for its own reasons. Making it state action merely because it is reported to medical licensing authorities would be just as nonsensical as making a private employer's decision to fire a parolee state action because it is reported to the parole commission. In each case, the reasons for making the decision may be totally independent of the state's reason for wanting the information