582 A.2d 269

**Anis M. WASSIF**

v.

**The NORTH ARUNDEL HOSPITAL ASSOCIATION, INC.**

**No. 41, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

Nov. 28, 1990.

J. Seymour Sureff, Baltimore, for appellant.

L. Dale Burgmeier (Burgmeier and Downer, on the brief), Annapolis, for appellee.

Argued before ALPERT and FISCHER, JJ., and JAMES E. GETTY, Associate Judge of the Court of Appeals (retired) Specially Assigned.

FISCHER, Judge.

Dr. Anis M. Wassif appeals from an adverse decision of the Circuit Court for Anne Arundel County (Goudy, J.). Dr. Wassif, an anesthesiologist on the staff of the North Arundel Hospital Association, Inc., brought an action for injunctive relief and damages with respect to a three week suspension imposed upon him for alleged violations of the hospital's by-laws. Imposition of the suspension was deferred by the court pending the outcome of this appeal.

Appellant frames two issues:

1. Did the trial court err in granting the defendant's Motion for Judgment made at the end of the plaintiff's case dissolving the injunction and dismissing the case?

2. Did the trial court err in deciding that Doctor Wassif's due process or right to a fair hearing were [not] violated by the hospital?

We will consider both issues together. Appellant has been serving as an anesthesiologist on the staff of the hospital for over sixteen years. By letter dated January 25, 1988, Dr. Del Carmen, Chief of Anesthesiology and Dr. Wassif's supervisor, requested that the Medical Executive Committee of the hospital take disciplinary action against Dr. Wassif. Dr. Glenn F. Robbins, Chairman of the Medical Executive Committee, appointed Dr. Leo A. Courtney and four other physicians to an ad hoc committee to investigate the allegations pursuant to Article V, Section 1.C of the Medical Staff By–Laws.

On February 18, 1988, Dr. Courtney forwarded a letter to Dr. Glenn Robbins relating the finding of his committee.

Based upon the findings of the Ad Hoc Committee, the Medical Executive Committee recommended a three week suspension. On March 14, 1988, Dr. Wassif, through his attorney, requested a hearing which was conducted on April 5, 1988 before a panel of three physicians who subsequently approved the three week suspension. On May 24, 1988, the Medical Executive Committee reaffirmed the suspension. On June 6, 1988, Dr. Wassif entered an appeal to the hospital's Board of Directors, and on November 7, 1988, the Board voted to accept the recommendation of the Medical Executive Committee.

On November 21, 1988, Dr. Wassif initiated an action for injunctive relief in the circuit court. Dr. Wassif's complaint came before Judge Goudy for hearing on November 9, 1989. After several days of testimony and arguments, Judge Goudy issued the following ruling on November 14, 1989:

COURT: You can be seated. All right, what I'm going to do at this time is dismiss the case. The Court will deny the injunction requested. The Court finds that the by-laws that it's read are appropriate. Even though the Court may not be in a position to do that, it certainly seems reasonable to the Court. The Court finds that there's no proof or credible proof, in any event, of lack of due process in this case. There's no requirement that Doctor Wassif obtain each complaint as they're written. There's no requirement that the complaint be signed by the actual complainer. In this case, the Court finds that all those that it looked at was signed by someone, that being either a supervisor or it had some identification on it from which the author could be obtained or, at least, the patient's record could be obtained and the doctor in this case had the right and did obtain the patient's record. There's no right the Court knows of for an employer, in and of itself, to make public or publish to a employee complaints or grievances as they're given to an employer and, in this case to the contrary, the testimony before the Board was that the supervising doctor, Doctor Del Carmen, did tell Doctor Wassif. Now, I know he disputes

that but, at least, that was before the ... before the reviewing body in this case. There's no evidence in the case that the by-laws violated any of the Plaintiff's rights.

The Court, if it has to at this juncture, finds as a matter of fact that the testimony of the expert doctor that was admitted is not credible with regard to its effect on the hospital with regard to these violations and so forth. When I say that, the effect of patient care and the findings that the hospital found, that is, the Board found in this case.

The Court finds that the doctor was given a hearing, that there's no testimony that the hearing officers were other than impartial and he had an opportunity and did present his defense. He had time or could have asked for, if he wished, a postponement to further gain defense. He elected not to do so. I realize he says that was for the purpose that he mentioned but that was his choice.

The Court further finds that there is no impropriety from what it's heard of the hospital being represented by an attorney and that attorney advising the hospital Board as to how to conduct its hearings or other legal matters.

The Court finds that it cannot find that the decision of the Board was irrational, that is, there's no evidence to that effect, and finds that it was based upon sufficient and substantial evidence. Therefore, I will not disturb the finding of the Board and will deny the injunction requested.

Mr. Burgmeier, if you wish, you can prepare a Order to that effect.

MR. BURGMEIER: Your Honor, the complaint is dismissed in whole as to damages, also?

COURT: Yes. I'm dismissing it.

MR. BURGMEIER: Yes, sir. I'll prepare an Order, Your Honor.

MR. SUREFF: Your Honor, if ... if an appeal is taken, would the Court consider withholding imposition of the suspension until the appeal can be decided?

Court: I won't say I won't not consider it but I really don't ... if you can show me a basis for it, I'll be glad to but I'm ... I feel pretty sound with my decision. I feel that if I'm iffy about something, I'd readily grant it; if I'm pretty solid, if I feel like the Court's on solid grounds, I don't do that. You'll have to get it from the Court of Special Appeals. They have the authority to do it I believe.

MR. SUREFF: Yes.

COURT: All right, you're excused.

Appellant contends that Judge Goudy's decision was clearly erroneous in that appellant brought forth sufficient credible evidence to require the hospital to present a defense. He further insists that the entire procedure utilized by the hospital was "inherently unfair." His basis for asserting unfairness has multiple facets. He asserts that Dr. Courtney's Ad Hoc Committee was slip-shod in its investigation and failed to inform appellant that he was the subject of an investigation. Dr. Wassif also complains that the Medical Executive Committee formed its opinion based upon the report of the Ad Hoc Committee and did not give appellant an opportunity to be heard prior to recommending suspension. Appellant further complains that the hearing on April 5, 1988 before the three member panel of physicians was flawed because he was not afforded sufficient time to prepare, had to obtain patients' charts without assistance, and the attorney for the hospital, L. Dale Burgmeier, Esq., presided over the hearing. Dr. Wassif insists Mr. Burgmeier's participation gave the appearance of impropriety.

In disciplining Dr. Wassif, the hospital acted pursuant to Article V of its by-laws which states in part:

Routine corrective action may be initiated when a member of the Medical Staff engages in, makes, or exhibits acts, statements, demeanor or professional conduct either within or outside the Hospital which is or is reasonably likely to be detrimental to patient safety or to the delivery of quality patient care or disruptive to Hospital operations,

or whenever a member of the Medical Staff is in violation of the Medical Staff By–Laws, Rules and Regulations, Hospital policy or Administrative rules.

Article VI of the by-laws affords a physician against whom disciplinary action is pending certain rights. He is entitled to a hearing before a committee of the Medical Staff and appellate review by the hospital's Board of Directors. Article VI, Section 5 of the by-laws sets forth detailed rules on the conduct of hearings.

█ It is important to note that appellant does not contend that he was denied any rights afforded to him under the by-laws. Instead, he avers that he was denied fundamental due process rights, presumably, those granted by the Fourteenth Amendment to the United States Constitution and the Civil Rights Act, 42 U.S.C. § 1983.[1]

█ The protections afforded to citizens by the Fourteenth Amendment to the United States Constitution and the Civil Rights Act (42 U.S.C. § 1983) do not apply to private conduct. Those provisions only apply to actions occurring under color of state law or sufficiently controlled by the state as to be considered state action. *Jackson*, 419 U.S. at 349, 95 S.Ct. at 452. Dr. Wassif, therefore, can prevail only if the action taken by the hospital can be considered state action.

The issue of state action by a private organization was considered by the Supreme Court of the United States in *NCAA v. Tarkanian*, 488 U.S. 179, 109 S.Ct. 454, 102

---

1. Appellant based his Amended Complaint upon alleged violations of his due process rights under the Fourteenth Amendment and 42 U.S.C. § 1983. Appellee contends that appellant has effectively abandoned these claims, because he failed to introduce evidence that the hospital was a public institution.

The status of the hospital, as either a private or public institution, is inconsequential. The pivotal question is whether the alleged deprivation of rights is the result of "state action." Certainly, a private party's action, if it withstands the analysis set out in *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974), can rise to the level of "state action." Likewise, every action of a public institution does not rise to the level of "state action."

L.Ed.2d 469 (1988). The NCAA, an association of private universities and colleges, imposed sanctions upon the University of Nevada, Las Vegas (UNLV), a state university. Among the sanctions imposed was a request that UNLV suspend its basketball coach, Jerry Tarkanian, for the period of the probation imposed. Tarkanian brought suit in the state courts of Nevada alleging that he had been deprived of his Fourteenth Amendment due process rights in violation of 42 U.S.C. § 1983. Tarkanian prevailed in the state courts and the Supreme Court of the United States granted certiorari.

The Supreme Court held that "[a]s a general matter the protections of the Fourteenth Amendment do not extend to 'private conduct abridging individual rights.'" *NCAA*, 488 U.S. at 191, 109 S.Ct. at 461, 102 L.Ed.2d at 484 (quoting *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 722, 81 S.Ct. 856, 860, 6 L.Ed.2d 45 (1961)).

Appellant relies, in part, upon *Christhilf v. Annapolis Emergency Hospital Association*, 496 F.2d 174 (4th Cir. 1974). In *Christhilf*, the United States District Court for Maryland and the Fourth Circuit Court of Appeals held that "the involvement of the federal and state governments through the Hill–Burton Program and the Anne Arundel County Grant sufficiently implicated the state in the affairs of this otherwise private institution to subject the hospital to the restrictions which the fourteenth amendment places upon state action." *Christhilf*, 496 F.2d at 178. Unfortunately for appellant, *Christhilf* was pointedly overruled with respect to this precise issue in *Modaber v. Culpeper Memorial Hospital, Inc.*, 674 F.2d 1023 (4th Cir.1982).

In *Modaber*, the plaintiff physician brought a 42 U.S.C. § 1983 action against a private nonprofit hospital charging that its revocation of his clinical staff privileges deprived him of a valuable property right without affording him procedural due process under the Fourteenth Amendment. The Fourth Circuit Court of Appeals held that withdrawal of a physician's clinical staff privileges at a private hospital which received Hill–Burton Act funds, accepted medicare

and medicaid patients and reported privileges revocations to the state medical licensing authorities did not constitute state action for purposes of the Fourteenth Amendment. *Modaber*, 674 F.2d at 1027.

To determine whether a hospital's termination of a physician's privileges constitutes "state action," we must inquire " 'whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity [such] that the action of the latter may fairly be treated as that of the State itself.' " *Modaber*, 674 F.2d at 1025 (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974)). The Supreme Court in *Jackson* made it clear that state involvement without state responsibility cannot establish this nexus. *Jackson*, 419 U.S. at 358, 95 S.Ct. at 457. "A state becomes responsible for a private party's [action] if the private party acts (1) in an exclusively state capacity, (2) for the state's direct benefit, or (3) at the state's specific behest." *Modaber*, 674 F.2d at 1025. A private party acts in an exclusively state capacity when it "exercises powers traditionally exclusively reserved to the state," *Jackson*, 419 U.S. at 352, 95 S.Ct. at 454, "for the state's direct benefit when it shares the rewards and responsibilities of a private venture with the state," *Jackson*, 419 U.S. at 357–58, 95 S.Ct. at 456–57 (citing *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 723–24, 81 S.Ct. 856, 860–61, 6 L.Ed.2d 45 (1961)), and "at the state's specific behest when it does a particular act which the state has directed or encouraged." *Jackson*, 419 U.S. at 357, 95 S.Ct. at 456.

▆ Appellant alleged in his second amended complaint for injunctive and other relief, that North Arundel Hospital received state funding and federal funding under the Hill–Burton Act and that the hospital was a Maryland corporation. Consequently, he concluded that physicians associated with the hospital are afforded certain guarantees under the Fourteenth Amendment to the United States Constitution and also afforded guarantees under the Civil Rights Act, 42 U.S.C. § 1983. We disagree.

The Hill–Burton Hospital Survey Construction Act (the Act) was enacted by Congress in 1946. The Act provided grants to participating states for the construction and modernization of both public and private hospitals in areas where a need existed. Dowell, "Hill Burton: The Unfulfilled Promise," 12 Journal of Health Politics, Policy and Law, 155 (1987). Hospitals receiving state and federal funding "operate as integral parts of comprehensive joint or intermeshing state and federal plans or programs designed to effect proper allocation of available medical and hospital services for the best possible promotion and maintenance of public health." *Modaber*, 674 F.2d at 1026. The fact that a hospital implements a governmental program does not establish the "nexus required" for "state action." *Modaber*, 674 F.2d at 1026. The Fourth Circuit Court of Appeals went on to explain in *Modaber*, 674 F.2d at 1026:

> The recipients do not act in an exclusively state capacity. Although health care is certainly an 'essential public service, it does not involve the exercise by a private entity of powers traditionally exclusively reserved to the State.'

> Although the hospitals are within a legislative design to better public health and are subject to extensive regulation, they remain solely responsible for providing the service and solely entitled to the profits therefrom.

> Finally, the Act does not require states to direct or encourage the procedure for making staff privileges decisions.... Although it prescribes that states compel recipients to make personnel decisions on a merit basis, ... it does not specify the method [to be used]. At most, it declares that states must approve the policies which recipient hospitals adopt. *Mere state approval is not "state action."* [Emphasis added, citations omitted.]

Consequently, the fact that North Arundel Hospital received state funding and federal funding under the Hill–Burton Act does not establish a sufficient nexus that would require us to conclude that the disciplinary action taken was "state action."

 Appellant further alleged in his amended complaint that North Arundel Hospital was incorporated in this state, thus implying that the act of incorporation rises to the level of "state action." This is not correct. A business that subjects itself to state regulation does not by that circumstance convert its action into that of the state for purposes of the due process clause of the Fourteenth Amendment, nor does the fact that the regulation is extensive and detailed convert a business' actions to "state action." Although acts of a heavily regulated business entity may be more readily considered "state" acts than the acts of an entity lacking such characteristics, nevertheless, the inquiry is whether there exists a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself. *Jackson,* 419 U.S. at 350, 95 S.Ct. at 453. Mere incorporation by North Arundel Hospital is not a sufficient nexus which would lead us to conclude that its disciplinary action of Dr. Wassif was "state action."

The State is not sufficiently connected to the actions of North Arundel Hospital in suspending Dr. Wassif's privileges so as to make its conduct attributable to the State for purposes of the Fourteenth Amendment and 42 U.S.C. § 1983. We, therefore, have no occasion to decide appellant's due process claim. Consequently, the trial court did not err in granting the defendant's motion for judgment, denying injunctive relief and finding that appellant's due process rights were not violated.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.