582 A.2d 1225

Samuel R. OLSEN

v.

**MAYOR AND CITY COUNCIL OF BALTIMORE et al.**

**No. 10, Sept. Term, 1989.**

Court of Appeals of Maryland.

Dec. 21, 1990.

Anthony P. Palaigos (Blum, Yumkas, Mailman, Gutman & Denick, P.A., on brief), Baltimore, for appellant.

Sandra R. Gutman, Asst. City Sol. (Neal M. Janey, City Sol., Ambrose T. Hartman, Deputy City Sol., on brief), Neil J. Ruther (Jeffrey P. McEvoy, Melnicove, Kaufman Weiner & Smouse, P.A., on brief), Baltimore, for appellees.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS *, and BLACKWELL,* JJ.

---

* Adkins, J., and Blackwell, J., now retired, participated in the hearing and conference of this case while active members of this Court but did not participate in the decision and adoption of this opinion.

McAULIFFE, Judge.

This appeal involves a satellite dish antenna, more formally referred to by the Federal Communications Commission (FCC) as a satellite receive-only earth station. Samuel R. Olsen sought the approval of Baltimore City officials to maintain a ten foot wire mesh satellite dish antenna on the roof of his home in the Federal Hill area of the City. His request was denied, and has been denied at each administrative and judicial level where he thereafter sought relief. Before us, he argues that the ordinances relied upon by the City have been preempted by an FCC regulation codified at 47 C.F.R. § 25.104 (1986).

## I.

Olsen owns a three story single-family dwelling located on East Henrietta Street in Baltimore City. The property is zoned R–8, General Residential, and is located within the area governed by the Montgomery Urban Renewal Plan. Olsen's predecessor in title, a corporate entity of which Olsen is president, erected a ten foot aluminum satellite dish antenna on the rear portion of the roof of the dwelling. Olsen was apparently advised that the antenna should not have been installed without approval of the City, and therefore filed a "permit application" with the Department of Housing and Community Development. The application was denied based upon the fact that a wire mesh satellite dish antenna exceeding six feet in width was not allowed as an accessory use in the R–8 zone.

Olsen filed an appeal to the Board of Municipal and Zoning Appeals (the Board), stating that an antenna of the size permitted as an accessory use would not produce a signal adequate for television reception. This appeal was intended to serve also as an application for a conditional use. The Board circulated the notice of appeal to various City bureaus and departments for comment. The Commissioner of the Department of Housing and Community Development refused to consent, noting that the antenna vio-

lated a requirement of the Montgomery Urban Renewal Plan that "[a]ntennae ... shall not be visible from any front or side elevation or visible from any point of the street." The Director of the Department of Planning recommended disapproval for the same reason, and also noted that "[t]he dish cannot be screened."

At a hearing conducted by the Board, Olsen offered evidence, based upon published data and on-site tests, that an antenna having a diameter of eight to ten feet was required for adequate reception at his location.[1] That evidence was not refuted. Olsen also proved that ground installation was not possible because surrounding buildings obstructed the line-of-sight "reception window" needed between the antenna and the satellites.[2]

Representatives of the Federal Hill Neighborhood Association testified in opposition to the application, pointing out that the dish antenna could be seen from immediately adjacent streets, and that it was not in compliance with Baltimore City's zoning regulations or the requirements of the Montgomery Urban Renewal Plan. They also testified that the presence of the roof-mounted antenna was inconsistent with the national, city, and community desires to maintain the historic and traditional architecture of the area.[3] Neighbors testified that the dish antenna was obtrusive, an "eyesore," and a "detriment" to surrounding properties. One witness described the antenna as "so huge that

---

1. In its commentary of 13 February 1986, accompanying the adoption of 47 C.F.R. § 25.104, the FCC noted that "[u]nder current technology, an antenna must be at least 8 to 12 feet in diameter to adequately receive video signals transmitted by satellite." 51 Fed.Reg. 5519, 5524 n. 77 (1986).

2. Transmitting satellites are in geostationary orbit 20,000 miles above the equator, located between 69 degrees and 139 degrees West. In the Baltimore area, the approximate range of the required elevation above the horizon for a receiving dish antenna is between 12 degrees and 43 degrees, depending upon which satellite is selected for reception.

3. The President of the neighborhood association testified that the property is located within the Federal Hill National Historic District.

it looks like a spaceship launched on top of a rooftop, in scale to the size of the building." [4]

In reply, Olsen argued that the City ordinances had been preempted by federal regulations; that denial of the application would be tantamount to a total denial of the federally guaranteed right to receive satellite signals by use of a satellite dish antenna; and, that the evidence was insufficient to justify denial of a conditional use.

The Board denied the application. It found that the proposal to maintain the antenna at its present location met neither the requirements of the Montgomery Urban Renewal Plan, nor the standards of Baltimore City's zoning code for the authorization of a conditional use.

Olsen appealed to the Circuit Court for Baltimore City. That court affirmed the decision of the Board, and Olsen appealed to the Court of Special Appeals. We issued a writ of certiorari before consideration by the intermediate appellate court, and we affirm.

## II.

■ The FCC regulation relied upon by Olsen to support his claim of federal preemption provides, in pertinent part, as follows:

State and local zoning or other regulations that differentiate between satellite receive-only antennas and other types of antenna facilities are preempted unless such regulations:

(a) Have a reasonable and clearly defined health, safety or aesthetic objective; and

(b) Do not operate to impose unreasonable limitations on, or prevent, reception of satellite delivered signals by receive-only antennas or to impose costs on the users of such antennas that are excessive in light of the purchase and installation cost of the equipment.

---

4. The townhouse on which the ten foot dish antenna is mounted is eleven and one-half feet wide.

47 C.F.R. § 25.104 (1986). The Supreme Court has held that under the Supremacy Clause of the Federal Constitution, the FCC, in an appropriate case, has the authority to preempt State and local law by regulation. *City of New York v. FCC*, 486 U.S. 57, 65–66, 108 S.Ct. 1637, 100 L.Ed.2d 48 (1988); *Louisiana Public Service Comm'n v. FCC*, 476 U.S. 355, 368–69, 106 S.Ct. 1890, 1898–99, 90 L.Ed.2d 369 (1986). Unlike many other preemption cases, there is no need here to determine whether the federal body intended preemption—it expressly said that it did, under certain defined circumstances. The question then, is whether those circumstances exist with respect to the relevant Baltimore City ordinances.

The threshold issue, in determining whether there is preemption, is whether the ordinance "differentiate[s] between satellite receive-only antennas and other types of antenna facilities...." If it does not, it is not preempted by the regulation. If it does, it is preempted unless the ordinance meets both of the reasonableness tests set forth in the FCC regulation.

### III.

The Baltimore City zoning code fails the threshold test of differential treatment of satellite dish antennas. Article 30, § 4.1 b. 1b,[5] allows, as accessory uses,

> Accessory free standing microwave antennas (satellite dishes) mounted on a single stanchion when six feet or less in diameter and less than ten feet in height and constructed of expanded aluminum mesh or wire screen.

Mounted mesh satellite antennas exceeding six feet in diameter are permitted only as conditional uses. A conditional use requires the approval of the Board of Municipal and Zoning Appeals. Antennas other than satellite dish antennas are not subjected to the same restriction. Thus, the

---

**5.** The Baltimore City code sections cited here for accessory and conditional uses apply to the R–1 zone. They are made applicable to the R–8 zone by subsections b. and c. of § 4.8–1.

zoning code provisions of the Baltimore City Code can survive preemption only if they pass both of the reasonableness tests established by the FCC regulation.

Olsen argues that the City's zoning regulations fail both of the tests. He asserts that the standards established for the granting or denial of conditional uses largely speak in general terms of health, safety, general welfare, and morals, and do not approach the particularized and specifically tailored provisions that the FCC regulation requires in order to ensure that a fair balance is struck between the strong federal interest in preserving the rights of individuals to construct and use antennas to receive satellite delivered signals, and the legitimate interests of state and local governments in regulating land uses. He points to certain language employed by the FCC in the explanatory text accompanying the regulation:

> If a community chooses to enact an ordinance which differentiates in its treatment of different types of antennas, it must bear a high burden.
>
> \* \* \* \* \* \*
>
> Moreover, an ordinance which discriminates cannot impose size restrictions only on receive-only antennas which would effectively preclude reception. (Footnote omitted.)

51 Fed.Reg. 5523, 5524 (1986).

Olsen further contends that the single specific standard developed by the City in connection with the grant or denial of conditional uses for satellite antennas is deficient in that it fails to require, as opposed to simply permitting, consideration of the right to effectively receive satellite signals. The standard in question provides:

> In the case of the placement or erection of microwave antennas (satellite dishes), the Board may consider the quality of signal reception but must find that the antenna will not interfere with the rights of the adjacent and neighboring properties to light, air and sun. In addition, the Board may specify the placement of the antenna and require screening.

Baltimore City Code, Article 30, § 11.0–5(a)14 (1976, 1983 Repl.Vol., 1989 Supp.).

The City responds that the standards established by the code are sufficient under the test established by the FCC regulation. Interestingly, and without explaining how permissive language becomes directory, the City argues that section 11.0–5(a)14 "directs the Zoning Board to give consideration to the quality of signal reception...." Appellees' Brief at 16.

The question of the preemptive effects of the FCC regulation has been discussed in several recent cases. *See, e.g., Van Meter v. Township of Maplewood*, 696 F.Supp. 1024 (D.N.J.1988) (local ordinance limiting satellite dish antenna size to six feet and requiring screening preempted by FCC regulation where evidence showed ten foot dish and 14 degree elevation required for adequate reception); *Brophy v. Town of Castine*, 534 A.2d 663 (Me.1987) (narrowly drawn local zoning ordinance valid even though effectively foreclosing satellite signal reception by applicant; no preemption in absence of showing that ordinance as written or applied differentiated in treatment of satellite dish antennas); *Hunter v. City of Wittier*, 209 Cal.App.3d 588, 257 Cal.Rptr. 559 (1989) (broad standards of city ordinance insufficient to satisfy requirements of FCC regulation, and are therefore preempted); *Alsar Technology v. Zon. Bd. of Adj.*, 235 N.J.Super. 471, 563 A.2d 83 (1989) (local ordinance preempted as discriminatory and imposing unreasonable burden on satellite signal reception); *Minars v. Rose*, 123 A.D.2d 766, 507 N.Y.S.2d 241 (N.Y.App.1986) (FCC regulation preempts local ordinance if interpreted to effectively bar, or unreasonably restrict, installation of satellite dish antennas in certain use districts). *See also* M. Richardson, *Dealing with Dishes: Satellite Television and Local Zoning*, 65 Mich.B.J. 1120 (1986).

## IV.

As interesting as the question of federal preemption of the provisions of the Baltimore City zoning code may be,

we find that we are not obliged to answer it. Instead, this appeal may be resolved by reference to the City ordinances enacting and amending the Montgomery Urban Renewal Plan, which are not a part of the zoning ordinance,[6] and which contain a non-discriminatory prohibition against the roof-top installation of *any* antennas that may be seen from the street.

The Montgomery Urban Renewal Plan, adopted in 1979 by Ordinance 1014, applies to the subject property. One of the stated objectives of the plan is "[t]o preserve and enhance the historic and architectural character of the neighborhood and the structures." The plan establishes standards applicable to modifications of properties in the project area, and provides that no permit should issue unless the proposed modification conforms to the established standards. As originally written, the standard pertaining to antennas provided:

> Antennae, air conditioning equipment, grills and other contemporary elements shall be as inconspicuous as possible.

In December of 1986, by Ordinance 849, the standard was revised to read:

> Antennae, air-conditioning equipment, grills, roof decks, satellite dishes, and other contemporary elements shall not be visible from any front or side elevation or visible from any point of the street, unless otherwise approved by the Commissioner of the Department of Housing and Community Development.

------

**6.** Section 16 of the Montgomery Urban Renewal Plan Ordinance provides that where a provision of the ordinance is found to be in conflict with any zoning ordinance, "the provision which establishes the higher standard for the promotion and protection of the public health and safety shall prevail." The Urban Renewal Ordinance also provides, at section 8, that the standards applicable to modifications of properties within the plan area shall be "additional standards," which are "over and above the codes and ordinances of the City of Baltimore."

Olsen does not argue that this standard is invalid. Nor does he dispute that the dish antenna installed on his roof top violates the requirements of the standard. The antenna can be seen from the adjacent street, and it is clear from the record that the Commissioner of the Department of Housing and Community Development has not approved this installation. Indeed, the Commissioner has specifically disapproved it.

The standard established by the Montgomery Urban Renewal Plan does not differentiate between satellite receive-only antennas and other types of antennas. It does not cross the threshold established by the FCC regulation, and it is not, therefore, preempted by the regulation. Indeed, the standard appears to be consistent with the language employed by the FCC when promulgating the regulation:

> Communities wishing to preserve their historic character may limit the construction of "modern accoutrements" provided that such limitations affect all fixed external antennas in the same manner. In adopting this rule we intend that it be a valid accommodation of local interests as well as of two federal interests, namely promoting interstate communications and historic preservation. Communities which are truly concerned with preserving their unique historic character may do so if they do not discriminate against satellite receive-only antennas.

51 Fed.Reg. 5523 (1986).

█ Olsen seeks to avoid the impact of the urban renewal ordinance by arguing that the proceedings which have generated this appeal deal only with the zoning code. He notes that his initial application for a permit was rejected because the antenna constituted a "zoning violation." He contends that his appeal challenged only that ruling, and was on a printed form entitled "appeal from the decision of the zoning administrator under the zoning ordinance." Thus, he argues, the Board should have restricted its consideration to the zoning ordinance, and should not have considered the urban renewal ordinance.

We do not agree. Even if Olsen is correct in his assertion that the provisions of the zoning ordinance which discriminate against satellite antennas have been preempted by the FCC regulation, he cannot escape the fact that the separate, self-standing urban renewal ordinance, which does not discriminate and is therefore not preempted, stands as a complete bar to the issuance of the permit he seeks. It is immaterial that the zoning official initially denying the request for a permit may have relied solely upon the zoning ordinance. When the matter was brought to the attention of the Board on appeal, the Board was made aware of the applicable urban renewal ordinance. The Board, in its findings, noted that the antenna failed to comply with that ordinance. The Board did not err in refusing to issue the permit on that ground.

JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED, WITH COSTS.

ELDRIDGE, Judge, concurring.

I concur in both the result and in the Court's opinion. In one respect, however, I would go further than the Court's opinion. The Court reserves the question of whether the Baltimore City Zoning Code, which treats conventional and receive-only satellite antennas differently, is preempted by the FCC regulation governing satellite receive-only antennas. 47 C.F.R. § 25.104 (1986). The Court finds it unnecessary to address the question because it holds that the Montgomery Urban Renewal Plan Ordinance does not discriminate in its treatment of conventional and satellite receive-only antennas and is determinative of the case. Nevertheless, because the resolution of the Zoning Code issue seems clear, and because future guidance is appropriate, I would expressly hold that the Baltimore City Zoning Code relating to the use of satellite receive-only antennas is preempted by the FCC regulation. *See Van Meter v. Township of Maplewood,* 696 F.Supp. 1024, 1029–1032 (D.N.J. 1988); *Alsar Technology v. Zon. Bd. of Adj.,* 235 N.J.Super. 471, 477–483, 563 A.2d 83, 86–89 (1989); *Hunter v. City of*

*Whittier,* 209 Cal.App.3d 588, 595–599, 257 Cal.Rptr. 559, 563–566 (1989); *See also Minars v. Rose,* 123 A.D.2d 766, 507 N.Y.S.2d 241, 242 (1986); *Brophy v. Town of Castine,* 534 A.2d 663 (Me.1987).

Furthermore, I concur with the Court's holding with respect to the Montgomery Urban Renewal Ordinance because the Ordinance is neutral on its face and appears to be neutral as applied. The Urban Renewal Ordinance prohibits the use of any type of antenna that is "visible from any front or side elevation or visible from any point of the street...."

A prohibition may appear to be neutral on its face but, because of other circumstances or characteristics, may operate in a discriminatory manner. For example, in light of the technology regarding satellite dishes and conventional antennas, and the different types of rooftops which exist, one might envision an area where functional receive-only satellite antennas on roofs were by their nature visible from the street whereas functional conventional outdoor antennas would not be. In this situation, although an ordinance like the Montgomery Urban Renewal Ordinance would appear to be neutral, only the use of conventional antennas would be permitted because satellite antennas would never conform to the requirements of the Urban Renewal Plan. An ordinance operating in this manner would be preempted by the FCC regulation. *See Van Meter v. Township of Maplewood, supra,* 696 F.Supp. at 1032; *Hunter v. City of Whittier, supra,* 209 Cal.App.3d at 593, 257 Cal.Rptr. at 562. In the present case, however, absolutely no evidence was presented before the Board of Zoning Appeals which might suggest such discrimination. On the contrary, the testimony at the administrative hearing indicated that conventional outdoor antennas were visible from the street and were deemed in violation of the Urban Renewal Ordinance unless erected prior to the effective date of the provision.

In addition, a neutral ordinance may be discriminatorily applied by those administering it. At the administrative hearing in the case at bar, counsel for Mr. Olsen elicited

testimony from two witnesses that conventional antennas, visible from the street, are currently in use in the Montgomery Urban Renewal area. Both witnesses, however, indicated that these antennas were erected prior to the effective date of the Montgomery Urban Renewal Ordinance. No evidence was presented suggesting that the installation of conventional rooftop antennas has been permitted since the passage of the Urban Renewal Ordinance. If in a subsequent case it were found that the use of visible conventional antennas has been permitted after the passage of that Ordinance, then the Montgomery Urban Renewal Ordinance would be preempted by the FCC regulation as an unreasonable limitation on the reception of satellite delivered signals. *See Brophy v. Town of Castine, supra,* 534 A.2d at 664–665.