622 A.2d 774

**Donald F. ESSLINGER**

v.

**BALTIMORE CITY, Maryland et al.**

**No. 1125, Sept. Term, 1992.**

Court of Special Appeals of Maryland.

April 5, 1993.

608

**610**

Thomas A. Bowden (Anthony P. Palaigos and Blum, Yumkas, Mailman, Gutman & Denick, P.A., on the brief), Baltimore, for appellant.

Sandra R. Gutman, Principal Counsel (Neal M. Janey, City Sol., on the brief), Baltimore, for appellee.

Argued before MOYLAN, FISCHER and MOTZ, JJ.

MOTZ, Judge.

This case involves application of a number of *res judicata* and collateral estoppel principles.

### (i)

On July 30, 1986, appellant, Donald F. Esslinger, a home owner in Baltimore City, applied to the City's Board of Municipal and Zoning Appeals (Board or Zoning Board), for a conditional use permit to retain a free-standing (8 foot by 9½ foot) satellite dish of solid material, which he had already installed on his property. After giving public notice and inspecting the premises, the Board held a hearing on October 28, 1986, in which it heard testimony from Esslinger and those opposing the application. On November 5, 1986, the Board issued a written opinion disapproving the application. The Board explained its reasoning as follows:

The Board, after having given due regard and consideration to the nature and condition of all the adjacent uses and structures and the facts in this case, is of the opinion that the application should be rejected. The Board is in agreement with the protestants that the dish is unattractive on the site at its present location and are concerned with the disruption to the telephone and television signals of the neighbors. The Board, in making this determination, has considered the nature of the proposed site, including its size and shape, the traffic patterns, the surrounding area, the proximity to dwellings, churches, etc., the accessibility of the premises for fire and police protection; the accessibility of light and air, etc.; the type and location of adequate utilities, the preservation of cultural and historic landmarks, the Urban Renewal Plans approved by the Mayor and City Council, all standards and requirements contained in this Ordinance, the intent and purpose of this Ordinance as set forth in Chapter 1, and all other matters considered to be in the interest of the general welfare of the community.

With due consideration to the guides and standards set forth in Sections 11.0–5a and 11.0–5c of the Zoning Ordinance and to the reports of the several City Departments as required by the Zoning Ordinance, the Board finds that the proposed use would menace and endanger the public health, security and general welfare.

Esslinger then appealed to the Circuit Court for Baltimore City where he claimed, *inter alia,* that the Zoning Board's decision was not supported by substantial evidence and that the Zoning Ordinance, Article 30 of the Baltimore City Code, as it related to satellite dish antennas (the Satellite Dish Ordinance), had been pre-empted by 47 C.F.R. § 25.104 (1986), a Federal Communications Commission Regulation (FCC Regulation). After a hearing on December 14, 1987, at which Esslinger was represented by counsel, the circuit court found that there was substantial evidence to support the Board's decision and that the Satellite Dish Ordinance had not been pre-empted by the FCC Regu-

lation. The grounds for the latter decision are not absolutely clear. The circuit court apparently found that the Satellite Dish Ordinance did not improperly differentiate between satellite receive-only antennas and other antennas and that, in any event, it met the reasonableness tests set forth in the FCC Regulation. Esslinger did not appeal that decision.

On February 21, 1989, Esslinger applied to the Board a second time; this time seeking approval to erect the identical satellite dish at the identical location. Before the Board, Esslinger raised the issue of pre-emption and submitted copies of the FCC Regulation for the Board's review. After considering the evidence before it, the Board on February 28, 1989, again disapproved Esslinger's application, finding that the antenna failed to meet the conditional use standards of the Satellite Dish Ordinance and that it would detrimentally affect the general welfare of the community. Esslinger did not appeal the Board's decision. Neither *res judicata* nor collateral estoppel was raised at the hearing before the Board and these principles were in no way relied upon by the Board in disapproving Esslinger's application.

On July 16, 1991, Esslinger made a third attempt to obtain Board approval for his proposed satellite dish. Esslinger again argued that the Satellite Dish Ordinance had been pre-empted by the FCC Regulation. Once again, however, the Board disapproved Esslinger's application for a permit. Esslinger appealed that decision to the Circuit Court for Baltimore City, raising for the second time before that court, the issue of pre-emption. The City filed a motion for summary judgment, arguing that there were no disputed issues of fact and that it was entitled to judgment as a matter of law on, *inter alia, res judicata* and collateral estoppel grounds. The trial court refused to grant summary judgment on *res judicata* or collateral estoppel grounds but instead found that the Satellite Dish Ordinance was not pre-empted by the FCC Regulation and that there was evidence to support the Board's decision and so affirmed that decision. Esslinger appealed to this Court and,

on February 22, 1993, in an unreported opinion we held that the circuit court erred in refusing to grant summary judgment on *res judicata* grounds and so reversed and remanded for an entry of summary judgment in favor of the Board on that basis. *Donald F. Esslinger v. Bd. of Municipal and Zoning Appeals of Baltimore City*, No. 826 September Term 1992.

On December 5, 1991, Esslinger filed a complaint in the United States District Court for the District of Maryland against the Board and various departments and employees of the City seeking declaratory and injunctive relief on these same issues. The basis for this complaint was the 1989 application for, and denial of, a conditional use permit. The City filed a motion to dismiss based on grounds of abstention, *res judicata*, and collateral estoppel. After a hearing, the District Court, on June 8, 1992, dismissed Esslinger's suit on abstention grounds. The record does not reflect the rationale for the abstention ruling but it well may have been the status of Esslinger's appeal of the *1991* Zoning Board decision, *i.e.*, that action was pending in the state courts.

On February 19, 1991, Esslinger filed the complaint in the case at hand, which is, except for two paragraphs alleging federal jurisdiction and venue, identical to the complaint dismissed on abstention grounds by the federal court. The basis for it is, once again, the 1989 application for, and denial of, a conditional use permit. In his complaint, Esslinger alleges that this is a "civil rights action brought pursuant to 42 U.S.C. § 1983 to redress violations of Plaintiff's rights under the first, ninth and fourteenth amendments to the United States Constitution." Specifically, he "challenges Defendants' refusal to allow him to erect and maintain a satellite receiving dish" on "his residential premises in Baltimore City" and maintains that portions of the Baltimore Zoning Ordinance "which classify free-standing satellite receiving dishes ... as conditional uses" violate the First Amendment "right to receive information," the Fourteenth Amendment rights to due process and equal protec-

tion, and are pre-empted by the FCC Regulation and so violate the Supremacy Clause. Esslinger seeks declaratory and injunctive relief, compensatory and punitive damages and attorneys fees. The City filed a motion to dismiss the entire action as barred by *res judicata* and collateral estoppel. On May 11, 1992, the circuit court granted the City's motion to dismiss.

On appeal, Esslinger raises five questions, which we have reordered as follows:

1. Whether a plaintiff suing under 42 U.S.C. § 1983 must exhaust State remedies prior to filing suit.

2. Whether, if indeed State remedies must be exhausted before suing under 42 U.S.C. § 1983, such remedies include judicial review of an administrative agency's decision.

3. Whether the Defendants waived the defenses of *res judicata* and collateral estoppel (1) by their laches in failing to set up the defenses, (2) by joining issue on the very questions previously litigated, and (3) by voluntarily opening an investigation of matters which they might have claimed to be concluded.

4. Whether the defense of *res judicata* is inapplicable because Esslinger's 1992 civil rights action involved different evidence and a different *res* from his previous zoning case.

5. Whether the Court of Appeals' decision in *Olsen v. Mayor and City Council of Baltimore*, 321 Md. 324 (1990), constituted an "intervening change in the applicable legal context" within the meaning of Restatement (Second) of Judgments § 28(2) (1980) so as to permit relitigation of Esslinger's previous challenge to Baltimore City's Satellite Dish Ordinance.

(ii)

■ It is now clearly established that a plaintiff suing under 42 U.S.C. § 1983—either in state or federal court—need not exhaust his administrative remedies prior to bring-

ing his § 1983 action. *See Felder v. Casey,* 487 U.S. 131, 146–150, 108 S.Ct. 2302, 2311–2313, 101 L.Ed.2d 123 (1988); *Patsy v. Bd. of Regents,* 457 U.S. 496, 508–512, 102 S.Ct. 2557, 2563–2565, 73 L.Ed.2d 172 (1982). *See also Maryland–National Cap. Park & Planning Comm'n v. Crawford,* 307 Md. 1, 12–15 (1986). Accordingly, even if exhaustion of administrative remedies ordinarily requires a party to seek judicial review of the decision of an administrative agency, Esslinger was not required to seek judicial review of the 1989 Zoning Board decision prior to filing the present civil rights action under 42 U.S.C. § 1983.

(iii)

Esslinger asserts that the principal defenses raised by the City, *res judicata* and collateral estoppel, were waived by the City's failure "to raise them during the proceedings that culminated" in the *1989* Zoning Board proceedings. In other words, Esslinger asserts that, because in 1989 the Zoning Board did not *sua sponte* rely on the circuit court's 1987 decision affirming the Zoning Board's 1986 decision, the City has somehow waived its *res judicata* and collateral estoppel defenses, even though the 1989 Zoning Board decision was never appealed to or reviewed by a circuit court. We note initially that it is not at all clear that the City was a party before the Zoning Board; if it was not, it is hard to see how it could waive a defense.

Moreover, and perhaps more importantly, Esslinger has not cited any authority that holds that a *res judicata* or collateral estoppel defense is waived by failure to assert it before a Zoning Board, particularly when the initial action was decided more than a year before. The Baltimore City Zoning Ordinance provides that:

If an application is disapproved by the Board, thereafter the Board shall take no action on another application for substantially the same proposal on the same premises until after 12 months from the date of the final determination by the Board or any Court of competent jurisdiction.

Baltimore, Md., Code art. 30, § 11.0–3.h. (1983). It is well established that, in deciding an application, a zoning board is to consider all pertinent factors enumerated in the applicable zoning ordinance, *see Heath v. Mayor and City Council of Baltimore*, 187 Md. 296, 305, 49 A.2d 799 (1946), and that a zoning decision is subject to revision if a change in factual circumstances is demonstrated. *See Cardon Investments v. Town of New Market*, 302 Md. 77, 90–92, 485 A.2d 678 (1984). In light of these principles and the language of § 11.0–3.h, it seems unlikely that the General Assembly intended to permit a Zoning Board to dismiss an application filed more than a year after the Board's denial of a previous application on the ground that the previous decision had *res judicata* or collateral estoppel effect. If the defense could not have been successfully raised before the Board, the failure to raise it can hardly constitute waiver of it. Perhaps for these reasons, the Court of Appeals has not hesitated to hold *res judicata* applicable in a zoning context to bar a subsequent action, even though *res judicata* does not seem to have been not raised as a defense before the Zoning Board. *See, e.g., Heller v. Segner*, 260 Md. 393, 272 A.2d 374 (1970); *Whittle v. Bd. of Zoning Appeals of Baltimore Cty.*, 211 Md. 36, 125 A.2d 41 (1956).

### (iv)

◼ Esslinger asserts that, if not waived, the defense of *res judicata* is, in any event, inapplicable here. He argues that his present § 1983 action involves different evidence and a different *res* from that involved in his previous zoning case. Under Maryland law, the requirements of *res judicata* or claim preclusion are:

1) that the parties in the present litigation are the same or in privity with the parties to the earlier dispute, 2) that the claim presented in the current action is identical to the one determined in the prior adjudication, and 3) that there was a valid final judgment on the merits.

*Cassidy v. Bd. of Education,* 316 Md. 50, 57, 557 A.2d 227 (1989). If all three elements are present then the final judgment in the first claim bars the entire subsequent claim. There is no dispute here as to the first or third elements: the same parties or their privies are involved in both the zoning case and the present action and there was a final judgment in the zoning case. Both of Esslinger's arguments challenging the applicability of *res judicata* focus on the second element: whether the two claims are identical.

His principal argument on this point is that they are not identical because the "same evidence" will not support his former zoning case and his present civil rights action. Specifically, he asserts that, in addition to the evidence needed to prevail in the zoning case, in this civil rights action he will need to present evidence to prove (1) defendants were acting under "color of state law," (2) he was deprived of a right "secured by the U.S. Constitution" and (3) "damages and attorneys fees." Thus, Esslinger argues, because the "same evidence" will not support both actions, the two claims are not identical and *res judicata* does not apply.

The most essential difficulty with this argument [1] is that six years ago the Court of Appeals concluded that the "same evidence" test "improperly narrow[s] the scope of a 'claim' in the preclusion context." *Kent Cty. Bd. of Educ. v. Bilbrough,* 309 Md. 487, 494, 525 A.2d 232 (1987). The Court, in a careful opinion, authored by Judge Rodowsky, approved a different approach for determining a "claim" for preclusion purposes, the "transaction" approach as set forth in § 24 of the Restatement (Second) of Judgments (1982) (hereinafter "Restatement"). *See Bilbrough,* 309 Md. at 498, 525 A.2d 232. Section 24 provides:

---

1. It also well may be, as the City asserts, that proper application of the "same evidence" test does not support Esslinger's argument that *res judicata* is inapplicable. *See, e.g., Mettee v. Boone,* 251 Md. 332, 247 A.2d 390 (1968); *Alvey v. Alvey,* 225 Md. 386, 171 A.2d 92 (1961).

(1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar (see §§ 18, 19), the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

(2) What factual grouping constitutes a "transaction", and what groupings constitute a "series", are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

■ Under the "transaction" approach, it is clear that the claim in the 1987 zoning case is identical to the present claim. Indeed, it is undisputed that both arise from precisely the same transaction, *i.e.,* Esslinger's attempt to place a free-standing satellite dish on his property. The facts of the two actions are thus related in "space, origin and motivation." Both involve Esslinger's request for and the Zoning Board's denial of a conditional use permit to allow the same satellite dish on the same property. The only difference between the 1987 zoning action and the 1992 civil rights action is that the latter protests a 1989 Zoning Board decision not to grant Esslinger a conditional use permit so that he could *erect* the dish and the former involved a 1986 Zoning Board decision not to grant Esslinger a conditional use permit so that he could *retain* the same dish.[2] Mary-

---

2. This difference provides the basis for Esslinger's argument that the present case does not involve the same *res* as his prior zoning case. Specifically, he asserts that an application for a permit to *retain* the satellite dish is not the same *res* as the application for a permit to *erect* the satellite dish. His sole authority for this argument is *Gittings v. Mayor and City Council of Baltimore,* 95 Md. 419, 52 A. 937 (1902). There the Court rejected a plaintiff's attempt to use *res judicata* principles offensively to prevent assessment of taxes in one year of taxes found illegal in the prior year, reasoning that "[t]he res in the

land courts have long recognized that such small differences in the posture of the zoning request do not prevent application of *res judicata. See, e.g., Century I Condominium Ass'n, Inc. v. Plaza Condominium Joint Venture,* 64 Md.App. 107, 113–14, 494 A.2d 713 (1985) (earlier decision governing height and conditional use exceptions acted as *res judicata* in later case involving building permit for same structure). Accordingly, the claim presented in this civil rights action is identical to that determined in the prior adjudication; all three *res judicata* elements are thus present. When this is so "a plaintiff may not relitigate a claim for relief by switching legal theories." *Bilbrough,* 309 Md. at 500, 525 A.2d 232 (quoting 1B James W. Moore et al., *Moore's Federal Practice* ¶ 0.410[1] at 361 (2d ed. 1984)).

■■■ Both § 24 of the Restatement and the Court of Appeals in approving the transactional test set forth there, however, make it clear that "[e]quating claim with transaction" is "justified only when the parties have ample procedural means for fully developing the entire transaction in the one action going to the merits to which the plaintiff is ordinarily confined." *Bilbrough,* 309 Md. at 499, 525 A.2d 232 (quoting Restatement § 24 cmt. a). Accordingly, we turn to the question of whether the parties did have "ample procedural means" for fully developing the entire transaction in the 1987 zoning case.

---

one case is not the same as in the other." *Id.* at 424, 52 A. 937. Esslinger's suggestion that this is analogous to the situation at hand ignores the logical underpinnings and limited scope of the *Gittings* holding. When, as in *Gittings,* "there is an undertaking ... to make a *series of payments* ... the obligation to make each payment is considered separate from the others and judgment can be obtained on any one ... of them without affecting the right to maintain an action on the others." Restatement § 24 cmt. d (emphasis added). *See id.* § 24 cmt. d, illus. 9. There was no undertaking to make payments here and no separate liability for payments in succeeding years. Rather, involved here are zoning applications in different years for a conditional use permit as to the same satellite dish in the same location. *Gittings* is inapplicable here; at oral argument Esslinger conceded as much.

(v)

The principal Maryland discussion of the question of whether the "procedural means" in the initial action were "ample" to permit the parties to develop fully the entire transaction is contained in *Shum v. Gaudreau*, 317 Md. 49, 562 A.2d 707 (1989). *See also Rowland v. Harrison*, 320 Md. 223, 577 A.2d 51 (1990). In *Shum*, a tenant asserted that a landlord's action in the circuit court "for the cost of repairing damage done to the leased premises" was barred by the landlord's earlier action "for repossession of premises and unpaid rent," which was within the exclusive jurisdiction of the Maryland District Court. *Shum*, 317 Md. at 51, 562 A.2d 707. Because "a summary ejectment action is limited to a judgment for repossession of premises and rent actually due" the landlord "could not have joined a ... general contract damages claim in that proceeding." *Id.* at 59, 562 A.2d 707. For this reason, the *Shum* court held the summary ejectment action did not afford the landlord "ample procedural means for developing the entire transaction" and so did not bar the second action. *Id.* at 59–60, 562 A.2d 707. Tellingly, however, the Court further noted that some of the claims made in the second action, *i.e.*, for septic tank maintenance, "are deemed additional rental"; since the District Court did have jurisdiction in the summary ejectment action over claims for rent, these claims were "barred by claim preclusion." *Id.* at 66, 562 A.2d 707.

 Here the initial action was a Zoning Board decision, affirmed in an on-the-record appeal by the circuit court, in which Esslinger asserted, *inter alia*, that he should have been permitted to place a satellite dish in his yard and the Satellite Dish Ordinance under which he was denied this permit was itself contrary to federal law. The present action is a civil rights action brought pursuant to 42 U.S.C. § 1983, in which Esslinger makes precisely the same assertions. The fact that the present action is brought pursuant to § 1983 does not make *res judicata* principles automatically inapplicable. Indeed, it is settled that even a federal court must hold that a § 1983 claim is barred by a prior

decision of a state court, if the courts of the state would have given the prior decision preclusive effect. *Migra v. Bd. of Education,* 465 U.S. 75, 85, 104 S.Ct. 892, 898, 79 L.Ed.2d 56 (1984). *See also University of Tennessee v. Elliott,* 478 U.S. 788, 796, 106 S.Ct. 3220, 3225, 92 L.Ed.2d 635 (1986). Although, the extent to which principles of res judicata and collateral estoppel apply to unreviewed administrative decisions may be "unclear under Maryland law," *compare Sugarloaf Citizens Ass'n v. Northeast Md. Waste Disposal Auth.,* 323 Md. 641, 658 n. 13, 594 A.2d 1115 (1991) *with Batson v. Shiflett,* 325 Md. 684, 701–708, 602 A.2d 1191 (1992), it is crystal clear that a final judgment of a circuit court affirming a decision of an administrative agency, like the 1987 judgment here, is entitled to full preclusive effect. *See, e.g., Fertitta v. Brown,* 252 Md. 594, 599, 251 A.2d 212 (1969); *Woodlawn Area Citizens Ass'n v. Comm's for Prince George's Cty.,* 241 Md. 187, 195–96, 216 A.2d 149 (1965); *Lawrence N. Brandt, Inc. v. Montgomery Cty.,* 39 Md.App. 147, 157–159, 383 A.2d 688, *cert. denied,* 282 Md. 735 (1978). Thus, the initial action here is conclusive "not only as to all matters that have been decided in the original suit, but as to all matters *which with propriety could have been litigated* in the first suit." *Rowland,* 320 Md. at 229, 577 A.2d 51, and numerous cases cited therein (emphasis in original).

In the initial zoning action, Esslinger did not assert "all matters" that he now asserts. Specifically, he did not assert that the Satellite Dish Ordinance violated the First or Fourteenth Amendments or 42 U.S.C. § 1983, nor did he request compensatory and punitive damages and attorneys fees, all of which he now claims. Certainly, Esslinger *could* have raised all the constitutional claims and the § 1983 claim [3] in the circuit court in 1987 as a basis for reversing

---

**3.** Section 1983 does not create legal rights; it merely provides a vehicle for enforcement of federal constitutional or statutory claims. *See Chapman v. Houston Welfare Rights Org.,* 441 U.S. 600, 617–618, 99 S.Ct. 1905, 1916, 60 L.Ed.2d 508 (1979); *see also Maryland Committee v. Tawes,* 228 Md. 412, 424–25, 180 A.2d 656 (1962), *reversed on*

the Zoning Board's 1986 decision, obtaining a license for his dish and having the zoning ordinance declared unconstitutional. *See* Baltimore, Md., Code art. 30, § 11.0–3.1. (1983) (a person aggrieved by the decision of the Zoning Board can appeal to the circuit court on the ground that the decision was "unlawful, in whole or part, and specifying the unlawful grounds thereof"); *Maryland Clothing Mfg., Inc. v. Mayor and City Council of Baltimore,* 207 Md. 165, 169, 113 A.2d 743 (1955). Indeed, he could have attacked the validity of the ordinance in the appeal of the zoning decision even on grounds not relied on before the Zoning Board. *See Cardon Investments,* 302 Md. at 84–85, 485 A.2d 678. *Ellicott v. Mayor and City Council of Baltimore,* 180 Md. 176, 181, 23 A.2d 649 (1942).

Part and parcel of being afforded "ample procedural means" in an initial action, however, is also being afforded the opportunity to pursue all of one's *remedies* in that action. *See* Restatement § 26(1)(c) (*res judicata* does not apply when a "plaintiff was unable to rely on a certain

---

*other grounds,* 377 U.S. 656, 84 S.Ct. 1429, 12 L.Ed.2d 595 (1964). The basis for its invocation here was the constitutional claims. This has been the usual basis asserted in the Maryland reported opinions involving § 1983 claims. *See Ritchie v. Donnelly,* 324 Md. 344, 597 A.2d 432 (1991); *Maryland–National Cap. Park & Planning v. Crawford,* 307 Md. 1, 511 A.2d 1079 (1986); *Prince George's Cty. v. Doe,* 300 Md. 445, 479 A.2d 352 (1984); *DeBleeker v. Montgomery Cty.,* 292 Md. 498, 438 A.2d 1348 (1982); *Md. Committee v. Tawes, supra,* 228 Md. 412, 180 A.2d 656; *Brown v. Ashton,* 93 Md.App. 25, 611 A.2d 599, *cert. granted,* 328 Md. 462, 615 A.2d 262 (1992); *Bancroft Info. Group, Inc. v. Comptroller,* 91 Md.App. 100, 603 A.2d 1289 (1992); *Wassif v. North Arundel Hosp. Ass'n,* 85 Md.App. 71, 582 A.2d 269 (1990); *Earle v. Gunnell,* 78 Md.App. 648, 554 A.2d 1256 (1989); *Cahill v. Montgomery Cty.,* 72 Md.App. 274, 528 A.2d 527, *cert. denied,* 311 Md. 286, 533 A.2d 1308 (1987); *Shapiro v. Chapman,* 70 Md.App. 307, 520 A.2d 1330 (1987); *Long v. Rothbaum,* 68 Md.App. 569, 514 A.2d 1223 (1986); *Wilson v. Jackson,* 66 Md.App. 744, 505 A.2d 913 (1986); *Leese v. Baltimore Cty.,* 64 Md.App. 442, 497 A.2d 159, *cert. denied,* 305 Md. 106, 501 A.2d 845 (1985); *Elliott v. Kupferman,* 58 Md.App. 510, 473 A.2d 960 (1984); *Ungar v. State,* 63 Md.App. 472, 492 A.2d 1336 (1985), *U.S. cert. denied,* 475 U.S. 1066, 106 S.Ct. 1379, 89 L.Ed.2d 604 (1986). Interestingly, in *Bilbrough,* the initial action, for which preclusive effect was sought, was a § 1983 action. *See* 309 Md. at 490, 525 A.2d 232.

theory of the case or to seek a *certain remedy* or *form of relief in the first action* because of ... restrictions on their authority ... and the plaintiff desires in the second action to rely on that theory or to seek that remedy or form of relief") (emphasis added). The critical question thus becomes whether in appealing the Zoning Board's initial decision Esslinger could have joined a claim for compensatory or punitive damages.

■ The Maryland Rules grant a circuit court the discretion to permit amendment to pleadings in administrative appeals "to raise any pertinent question not raised by a prior pleading." Md.Rule B8 (1992). The rules do not, however, *require* a court to grant a requested amendment. Maryland courts over the years have reviewed countless administrative decisions; indeed, with the growing number and complexity of government agencies, the number of administrative appeals seems to increase each year. We have not found even one reported opinion, however, in which a litigant was permitted to amend an administrative appeal to assert a claim for compensatory or punitive damages. A litigant asserting, or defending against, a claim for damages typically is permitted extensive discovery to build or defend his case; discovery is usually not available before a Maryland administrative agency and certainly was not available in this case. Yet in reviewing an administrative appeal the circuit court is usually, and was here, confined to reviewing the administrative decision for lack of substantial evidence or an error in law. *See Serio v. Mayor and City Council of Baltimore,* 208 Md. 545, 555, 119 A.2d 387 (1956); *Windsor Hills Improvement Ass'n v. Mayor and City Council of Baltimore,* 195 Md. 383, 389, 73 A.2d 531 (1950). *See also Ad + Soil, Inc. v. County Comm'rs of Queen Anne's Cty.,* 307 Md. 307, 321, 513 A.2d 893 (1986). *See generally* Md.Code Ann., State Gov't § 10–215 (1984). Thus, almost always, and certainly here, the scope of judicial review of administrative decisions is narrow. *Id. See also Broadview Apts. Co. v. Comm'n for Historical and Architectural Preservation,* 49 Md.App. 538, 545, 433 A.2d

1214, *cert. denied,* 291 Md. 773 (1981). *See generally Mayor & Aldermen of City of Annapolis v. Annapolis Waterfront Co.,* 284 Md. 383, 393–99, 396 A.2d 1080 (1979). Moreover, judicial review of an administrative decision is usually conducted by a judge alone; usually, there is no right to a trial by jury. *See* Md.Code Ann., art. 66B, § 2.09(c) (1988); State Gov't § 10–215. Yet, the state and federal constitutions generally provide for a right to a trial by jury in claims for civil damages. *See* Md.Declaration of Rights art. 23; U.S. Const. amend. VII.

■ For all these reasons, we think it highly unlikely that the Court of Appeals would hold that a Maryland court should, let alone must, permit a litigant to amend its administrative appeal from a Zoning Board decision to add a claim for money damages against the Zoning Board and various government officials. Accordingly, although Esslinger's claims for injunctive and declaratory relief are barred by *res judicata,* his claims for damages are not barred by *res judicata* since the latter could not have been asserted in the circuit court action reviewing the initial zoning case. We note that the Second Circuit has reached the same conclusion with regard to New York law on similar, but not identical, facts. *See Antonsen v. Ward,* 943 F.2d 198, 202–204 (2d Cir.1991); *Fay v. South Colonie Central Sch. Dist.,* 802 F.2d 21, 29–30 (2d Cir.1986); *Davidson v. Capuano,* 792 F.2d 275, 278–280 (2d Cir.1986). The remaining question is whether those claims are barred by collateral estoppel or issue preclusion.

### (vi)

This brings us to the argument that Esslinger presses most strongly, *i.e.,* that an "intervening change in the applicable legal context within the meaning of Restatement (Second) of Judgment § 28(2) (1980)" allows relitigation of his "previous challenge to Baltimore City's Satellite Dish

Ordinance."[4] Specifically, he asserts that the Court of Appeals decision in *Olsen v. Mayor and City Council of Baltimore*, 321 Md. 324, 582 A.2d 1225 (1990) "indicated the very distinct possibility that, upon consideration of an appropriate case, the FCC regulation would be found to have preempted Baltimore's Satellite Dish Ordinance."

We note initially that, contrary to Esslinger's assertions, the principle articulated in § 28(2) of the Restatement is applicable *only* to collateral estoppel or issue preclusion, not to *res judicata* or claim preclusion. The title of § 28(2) specifically provides it is an exception only to "issue preclusion"; the text of the section states:

> Although *an issue* is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, *relitigation of the issue* in a subsequent action between the parties is not precluded in the following circumstances:
>
> . . . .
>
> (2) The *issue* is one of law and. . . . (b) a new determination is warranted in order to take account of an intervening change in the applicable legal context or otherwise to avoid inequitable administration of the laws.

(emphasis added). Thus, in *Cassidy*, 316 Md. at 62–66, 557 A.2d 227, upon which Esslinger relies, it was only *after* the court determined that *res judicata* or claim preclusion did not bar relitigation because there was no valid, final judgment on the merits, that it held that, consistent with § 28(2)(b) of the Restatement, a change in the applicable legal context permitted relitigation of an issue of law.

▮▮▮▮▮ The authorities are in accord that generally a change in legal principles, suggesting what Esslinger char-

---

4. Esslinger nowhere claims that there has been any change in *factual* context; this is, of course, the usual basis for reasserting a challenge to a zoning decision that the Zoning Board has earlier denied. *See e.g., Woodlawn Area Citizens Ass'n*, 241 Md. at 196–200, 216 A.2d 149. *See infra* n. 6.

acterizes as a "very distinct possibility" of a different result in the second action, does not warrant denial of *claim* preclusion. 1B James W. Moore et al., *Moore's Federal Practice* ¶ 0.415 at 504 (2d ed. 1992) (hereinafter "Moore"); Charles A. Wright et al., *Federal Practice and Procedure* § 4415 at 130 (1981) (hereinafter "Wright"); *Chicot County Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 374–75, 60 S.Ct. 317, 319, 84 L.Ed. 329 (1940).[5] Thus, it is well established that even if a prior judgment is wrong, if final and between the same parties, on the same cause of action, *res judicata* applies. *Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 398–402, 101 S.Ct. 2424, 2428–2430, 69 L.Ed.2d 103 (1981); *DeMaio v. Lumbermens Mutual Cas. Co.*, 247 Md. 30, 34, 230 A.2d 279 (1967). Accordingly, even when a state statute, which was the basis of the first action, is held unconstitutional prior to the second action, *res judicata* is applied to bar the second action. *See, e.g., Boyles v. Boyles*, 268 Ark. 120, 594 S.W.2d 17, 19 (1980); *Reilly v. Reid*, 45 N.Y.2d 24, 407 N.Y.S.2d 645, 647, 379 N.E.2d 172, 175 (1978); *In re Estate of Tower*, 463 Pa. 93, 343 A.2d 671, 675 (1975).[6]

---

**5.** No case clearly addresses why *res judicata* (claim preclusion) and collateral estoppel (issue preclusion) are affected differently by changes in law but this would seem to be because of the far more limited purposes served by collateral estoppel. It never precludes the entire claim but only an issue actually litigated; and so exceptions to collateral estoppel present "less danger to interests of repose and reliance" and may be justified "by correspondingly reduced showings of public interest or private justice" than can exceptions to *res judicata.* 18 Wright § 4415 at 135.

**6.** Of course, if there has been prior to a decision in the second action a true "change in circumstances," *res judicata* might well be inapplicable, *see* Restatement § 24 cmt. f, particularly in a case, like that at hand, involving zoning matters. *See Woodlawn Area Citizens Ass'n,* 241 Md. at 196–200, 216 A.2d 149. Alternatively, a change in circumstances may "give rise to new causes of action, so that any conclusive effect in subsequent litigation would result from the operation of the initial judgment as collateral estoppel rather than as *res judicata.*" 1B Moore ¶ 0.448 at 836. Thus, if the Court of Appeals declared the ordinance unconstitutional on its face, or as applied to one in Esslinger's circumstances, then *res judicata* principles might well not bar a subsequent action by him to enjoin the Zoning Board's enforcement of

 The requirements and effect of collateral estoppel (issue preclusion) differ, of course, from those of *res judicata* (claim preclusion); while *res judicata* bars relitigation of every matter that was or *might have been litigated* in the first action, collateral estoppel only "foreclos[es] relitigation of a matter that has been litigated and decided." *Bilbrough*, 309 Md. at 489, 525 A.2d 232 (quoting *Migra v. Bd. of Education*, 465 U.S. at 77 n. 1, 104 S.Ct. at 894 n. 1). In order to invoke collateral estoppel, therefore, there is no requirement that the claim in the current action be identical to the one in the prior action or that there be a final judgment on the merits; both of which are requirements for *res judicata*. *See Cassidy*, 316 Md. at 57 and 62. Rather, collateral estoppel can be invoked if the following requirements are met:

> 1) the identity of parties, 2) the actual litigation of an issue of fact or law, 3) the essentialness of the determination to the judgment and 4) the appealability of that determination by the party against whom issue preclusion is being asserted.

*Cassidy*, 316 Md. at 62, 557 A.2d 227. These requirements are met here, *i.e.*, 1) the parties in the two actions are the same, 2) the issue of the constitutionality of the Satellite Dish Ordinance was actually litigated, 3) determination of that issue was essential to the circuit court's judgment affirming the Zoning Board, and 4) Esslinger could have appealed this determination. Accordingly, collateral estoppel would ordinarily preclude Esslinger from relitigating the issue of the constitutionality of the ordinance in a subsequent case seeking damages.

 As noted above, Section 28(2) of the Restatement, however, provides that collateral estoppel is inapplicable to an issue of law like that involved here, when there is an "intervening change in the applicable legal context" or

---

the ordinance. Of course, in those "changed circumstances," it seems highly unlikely that the Zoning Board would continue to enforce an ordinance declared unconstitutional by Maryland's highest court.

relitigation is necessary "otherwise to avoid inequitable administration of the laws." The question thus becomes: is relitigation necessary here to avoid inequity in the administration of the laws or to take account of a change in the applicable legal context. Esslinger relies on the Court of Appeals' decision in *Olsen, supra,* 321 Md. 324, 582 A.2d 1225 and a recent federal decision as having "wrought such a change." The *Olsen* Court, contrary to the circuit court in Esslinger's 1987 appeal from the Zoning Board, held that the Satellite Dish Ordinance did differentiate between satellite receive-only antennas and other antenna facilities and so had to satisfy the two prong "reasonableness tests established by the FCC regulation" in order to escape preemption. *Id.* at 329–30, 582 A.2d 1225. The *Olsen* Court found it unnecessary to reach the question of whether the Satellite Dish Ordinance met the reasonableness test or was, in fact, pre-empted because other city ordinances contained an independent, nondiscriminatory prohibition against the dish in that case. *Id.* at 332, 582 A.2d 1225. Even more recently, the United States District Court for the District of Maryland declared the Satellite Dish Ordinance "unconstitutional on its face," when challenged by a person living in an R–1 zoning district, because it was preempted by the FCC regulation and so enjoined the City from enforcing the Satellite Dish Ordinance in the R–1 zoning district. *Neufeld v. The City of Baltimore et al.,* HM–87–1383, 1993 WL 152905 (Jan. 29, 1993).[7]

Neither *Cassidy* nor § 28(2) of the Restatement articulates precisely what constitutes "an intervening change" in the "applicable legal context" or some other action leading to "inequitable administration of the law," sufficient to make collateral estoppel inapplicable. In *Cassidy,* the Court of Appeals cited numerous federal and state court decisions from other jurisdictions applying the rule set forth in § 28(2) of the Restatement. *See Cassidy,* 316 Md. at 65,

---

7. At oral argument, the City indicated that it has not noted an appeal of that judgment, but regarded it as distinguishable because it applied to only the R–1 zoning district and Esslinger lives in an R–3 zoning district.

557 A.2d 227. In none of these cases was a court presented with precisely the same situation as that presented here, *i.e.*, a subsequent holding by the state's highest court (*Olsen*), disapproving a portion of the rationale, but not the holding, relied upon in the initial judgment, and a subsequent holding by a federal trial court (*Neufeld*), reaching a contrary holding albeit on assertedly distinguishable facts.

In some of the cases cited by *Cassidy*, however, similar or, arguably even less controlling, decisions stating "new law," were held to constitute an "intervening change in the applicable legal context" sufficient to make collateral estoppel inapplicable. *See, e.g., Stewart v. National Shopmen Pension Fund*, 730 F.2d 1552, 1557 n. 10 (D.C.Cir.), *cert. denied*, 469 U.S. 834, 105 S.Ct. 127, 83 L.Ed.2d 68 (1984) (subsequent decision of another federal appellate court); *Staten Island Rapid Transit Operating Auth. v. Interstate Commerce Comm'n*, 718 F.2d 533, 542–43 (2d Cir. 1983) (subsequent decision of Interstate Commerce Commission); *Katz v. State Tax Assessor*, 472 A.2d 428, 431 n. 3 (Me.1984) (subsequent decision of State tax assessor). Furthermore, in *Olsen* itself, the Court held that a subsequent decision by this Court constituted such an "intervening change" of law, even though the Court of Appeals had not considered that precise issue. *See Cassidy*, 316 Md. at 62–66, 557 A.2d 227. Moreover, other courts, not cited in *Cassidy*, have held that "a change or development in controlling legal principles" does "not mean that the earlier decision must have been overruled or that the second ruling must be [totally] inconsistent with the first." *CBN Corp. v. United States*, 176 Ct.Cl. 861, 364 F.2d 393, 396 (1966). *See also Minnis v. United States Dept. of Agriculture*, 737 F.2d 784 (9th Cir.1984), *cert. denied*, 471 U.S. 1053, 105 S.Ct. 2112, 85 L.Ed.2d 477 (1985). Rather, these federal cases indicate that all that is necessary is a change in the underlying approach or rationale, *CBN*, 364 F.2d at 396, or "clarifi[cation]" of a legal issue. *Minnis*, 737 F.2d at 786 n. 1. A mere change in approach or clarification of a legal issue might not be sufficient for a Maryland court to find a

"change" in the applicable legal context. In light of these precedents, however, it seems clear that here *Olsen* and *Neufeld* do constitute an "intervening change in the applicable legal context" sufficient to make collateral estoppel inapplicable, or to require relitigation "to avoid inequitable administration of the laws." Accordingly, the circuit court's decision granting the City's motion to dismiss Esslinger's claims for money damages was erroneous and must be reversed.[8]

This does not mean, of course, that we are in any way suggesting, let alone holding, that Esslinger is entitled to money damages. We are simply holding that neither *res judicata* nor collateral estoppel bars his pursuit of those claims. Even if, on remand, a court should conclude that the Satellite Dish Ordinance is unconstitutional, the defendants may enjoy immunity from liability for the damages claimed. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *James v. Prince George's County,* 288 Md. 315, 418 A.2d 1173 (1980); *Brown, supra,* 93 Md.App. at 55, 611 A.2d 599. Moreover, there may be, as in *Neufeld,* some independent justification for the Zoning Board denial's of a conditional use permit to Esslinger. Furthermore, if because of either of those or other reasons, Esslinger is not a "prevailing party," he, like Neufeld, would not be entitled to attorneys fees. *See Hanrahan v. Hampton,* 446 U.S. 754, 756, 100 S.Ct. 1987, 1988, 64 L.Ed.2d 670 (1980) ("[t]he statute ... permits the award of attorney's fees only to a 'prevailing party' ").

---

**8.** We note that our decision here is entirely consistent with that reached in *Esslinger v. Bd. of Municipal & Zoning Appeals of Baltimore City,* No. 826 Sept. Term 1992. There, we held Esslinger's 1991 appeal to the circuit court of the 1991 Zoning Board decision was barred by *res judicata.* We held that action was precluded by the 1987 circuit court affirmance of the Zoning Board and/or the 1989 unappealed Zoning Board decision. In the 1991 appeal of the Zoning Board decision, Esslinger did not (indeed, could not) seek damages; the *only* action in which Esslinger has sought damages is the present case. Accordingly, unlike the present case, there can be no argument that in No. 826 the initial actions merely operated as collateral estoppel.

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART. CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

COSTS TO BE PAID ONE HALF BY APPELLANT AND ONE HALF BY APPELLEES.